**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Vara Birapaka,<br><br>Plaintiffs,<br><br>vs.<br><br>U.S. Army Research Laboratory, et al.,<br><br>Defendants. | Civil File No. 17-cv-04090-PAM-KMM |

# DEFENDANT GENERAL DYNAMICS CORPORATION'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS THE AMENDED COMPLAINT

## Introduction

General Dynamics Corporation respectfully moves this Court for an order dismissing it from this action for three reasons. First, the 59-page Amended Complaint (including exhibits) violates Rule 8's requirement that it be "a short and plain statement of the claim." Second, even at that length, the Amended Complaint fails to state a claim because it contains no allegations of wrongdoing by General Dynamics Corporation and is otherwise completely implausible. Third, Plaintiff failed to properly serve the Amended Complaint on General Dynamics Corporation because it was delivered to an employee of a subsidiary.

## Statement of the Case

The Complaint

On September 22, 2017, the Plaintiff, Mr. Birapaka, filed an Amended Complaint in this Court. ECF No. 14. The Amended Complaint names over 60 defendants. The

defendants include: dozens of colleges and universities (ranging from the Massachusetts Institute of Technology to the Board of Trustees of Community College District 535); the Greater Muskegon Catholic Schools; the cities of Eagan and Bloomington; the Wright-Patterson Air Force Base; the CIA, FBI, "National Security Administration" [sic], Department of Justice Legal Counsel, Department of Defense General Counsel; and a host of companies, including Alphabet, Qualcomm, IBM, Raytheon, Lockheed Martin, and General Dynamics. *See* Am. Compl. at 1.

The Amended Complaint invokes numerous federal laws, federal regulations, international laws, and treaties in sections entitled "Subject Matter Jurisdiction and Grounds for Filing" and "Federal Statutes and Additional Violations Included in this Complaint." *Id.* at 5-7. They run the gamut from RICO to Obstruction of Persons in the Free Exercise of Religious Beliefs (18 U.S.C. § 247) to the Nuremberg Code. *Id.* at 6-7.

Broadly stated, the Amended Complaint alleges violations relating to "human subject research and experimentation, intelligence warfare, trafficking, torture, violation of civil and human rights, industrial espionage, RICO Violations, oppression and enslavement by technological and other means." *Id.* at 2.

The Amended Complaint begins with a "History/Background" section. *Id.* at 11. It explains how Mr. Birapaka met a pastor who discussed with him the similarities between his life and that of the main character from "Good Will Hunting" (a quote from the movie is included in the Amended Complaint). *Id.* at 11. Mr. Birapaka was invited to join the pastor's church. *Id.* According to the Amended Complaint, "Plaintiff suspects that, through revelations of the PRISM project, or through the National Security Letters under

[the] Patriot Act, [and the] NDAA[,] the invitation prompted a FISA warrant against the Plaintiff." *Id*.

This warrant allowed "the [G]overnment (and its affiliate criminal syndicate)" to: collect Mr. Birapaka's "neuro-cognitive intelligence" through methods such as "neuroscientific techniques and technologies ("NEURINT")," "medical" and "weapons testing," "gaming, entertainment and racketeering." *Id.* at 11-12. In addition, the Amended Complaint alleges that the Government implanted Mr. Birapaka with "war technologies, including nano-hooks, nano-claws, nano-tubes, nano-antennae, nano-particles, and a semi-circular disk in his right eye intended to collect visual data." *Id.* at 12. This allowed the Government to target Mr. Birapaka's "free will, intellect, and emotions" and test and evaluate "war/medical/nanotechnologies" on him. *Id.*

The Amended Complaint also alleges that "[t]he criminal syndicate" stole Mr. Birapaka's "ideas, opinions, viewpoint, religious, cultural, social and political beliefs" and "trad[ed] them for profit on the open market." *Id.* at 12-13. According to the Amended Complaint, "[t]hese ideas couldn't be copyrighted or trademarked or protected as intellectual property as his biological-neuron-cognitive Metadata is being stored in the Defendants' Remote Neural Monitoring ("RNM") systems." *Id.* at 13.

Following this background, the Amended Complaint spends the next 28 pages on a litany of factual allegations, none of which specifically mention General Dynamics Corporation. *Id.* at 15-43. They include:

- <u>Traffic-related complaints.</u> The Amended Complaint details a number of near-miss traffic accidents, some of which are alleged to be intentional. *Id.* at 28, 29, 30, 31.

The Amended Complaint alleges that other cars drive "erratically and aggressively," including "passing [Mr. Birapaka] at high speeds, cutting him off and blocking him." *Id.* at 27. These vehicles often have graphics "correlating to words, phrases, colors, numbers, events, metaphors, and images from his public as well as private conversations, thoughts, his actions and reactions." *Id.* at 28.

- Employment-related complaints. The Amended Complaint alleges that between November 2011 and August 2013, Mr. Birapaka "submitted 10 resumes for employment." *Id.* at 29. However, "[u]nlike past submissions, none of his resumes were selected for an interview." *Id.* Additionally, when Mr. Birapaka did "obtain and pass[] several interviews, he was not hired." *Id.* A contract job at Menard's fell through in September 2013 after Menard's "had a change in resources." *Id.*
- Thefts. A case of Coca-Cola was stolen from Mr. Birapaka's apartment. *Id.* at 29-30. On a different occasion, his wallet and cell phone were stolen from his unlocked gym locker. *Id.* at 31.
- Other instances of harassment. On two separate occasions, the Amended Complaint alleges that Mr. Birapaka's apartment refrigerator broke and he became sick after it was replaced by the apartment management. *Id.* at 30. The Amended Complaint also charges that Mr. Birapaka discovered a container of ground coffee in his cupboard, even though he does not own a coffeemaker or buy coffee. *Id.* at 30-31. In May 2016, Mr. Birapaka was yelled at by a woman at the gym after he did not open the door for her. *Id.* at 32. Finally, "[s]uspicious people (later identified as

Defendants and their operators)" swarm Mr. Birapaka in public places like "malls, grocery stores, fast-food places, and highways." *Id.* at 33.

- Vehicle Tampering. The Amended Complaint details several instances of Mr. Birapaka getting flat tires. *Id.* at 31, 32, 38. It also alleges that Mr. Birapaka's vehicle was tampered with when his "side mirrors were pushed towards the door" in July 2016. *Id.* at 32.
- Physical attack. The Amended Complaint alleges that Mr. Birapaka was attacked with "DEW/NLW" on two occasions. *Id.* at 32. These attacks caused him to suffer fatigue, hot flashes, muscle pain, and inability to breathe. *Id.* "DEW/NLW" is not defined in the Complaint.
- Tampering with his phone and computer. Mr. Birapaka received telephone calls from unknown people and "emails from recruiters for jobs not related to his profession." *Id.* at 35. Mr. Birapaka would receive phone calls from people "linked to the names and words and taken out of context from his private phone calls." *Id.* For instance, in May 2011, Mr. Birapaka mentioned the word "California" in a call with family and friends. After that call ended, "he immediately received a spoofed phone call from a number in California." *Id.* The Amended Complaint also alleges that Mr. Birapaka's computer was infected with several viruses. *Id.* at 36.

The Amended Complaint then describes how Mr. Birapaka located Dr. Hildegarde Staninger, an industrial toxicologist, "through an online victims forum" in 2014. *Id.* at 42. "Bio resonance testing" by Dr. Staninger "detected nano and infrared material in his body" in March and September 2015. *Id.*

In March 2017, Mr. Birapaka "underwent a successful surgery to remove a nano bio-sensor implant from his posterior right ear." *Id.* at 42-43. Dr. Kolb, who conducted the surgery, produced a report. *Id.* at 47. Dr. Staninger analyzed the implant and also produced a report. Dr. Staninger's report "nam[es] the patents, manufacturers, researchers, and the users tied to the nano implant removed from" Mr. Birapaka's ear. *Id.* at 43. General Dynamics Corporation is not named in Dr. Staninger's report. Both reports are attached to the Amended Complaint.

Service of the Complaint

On October 30, 2017, a process server delivered the Amended Complaint and Summons to Kirsten Storlie, a Senior Manager of Contracts for General Dynamics Missions Systems, Inc. in Bloomington, Minnesota. *See* Ex. A at ¶¶ 2-4 (Decl. of Kirsten Storlie). General Dynamics Mission Systems, Inc. is a subsidiary of a subsidiary of General Dynamics Corporation. *Id.* at ¶ 4.

## Argument

### I. The 59-Page Amended Complaint Should Be Dismissed Because It Violates Rule 8.

#### a. The Amended Complaint is neither short nor plain.

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint's allegations must be "simple, concise, and direct." *Id.* 8(d)(1). "Rule 8 was not promulgated to provide helpful advice; it has the force of law, and it must be followed." *Gurman v. Metro Hous. & Redev. Auth.*, 842 F. Supp. 2d 1151, 1152 (D. Minn. 2011) (dismissing complaint under Rule 8).

Though pro se complaints are entitled to "liberal construction," that relaxed standard "does not extend to allowing defective and insufficiently pled claims to proceed"; they must still comply with Rule 8. *Machen v. Iverson*, No. 11-1557-DWF-JSM, 2012 WL 566977, at *15 (D. Minn. Jan. 23, 2012) (dismissing pro se complaint under Rules 8 and 12(b)(6)), *report and recommendation adopted*, 2012 WL 567128 (D. Minn. Feb. 21, 2012).

The Amended Complaint is certainly not "short": the fact section alone is over 30 single-spaced pages and contains dozens of convoluted factual allegations. *See* Am. Compl. at 10-43. Nor is the Amended Complaint "plain," "simple, concise" or "direct." Indeed, the bulk of it appears to be a list of nearly every indignity or mishap suffered by Mr. Birapaka for the past six years.[1] Most of these allegations describe minor, everyday occurrences: getting yelled at by someone at the gym, getting a computer virus, or not being interviewed for a job. The Amended Complaint also invokes a kitchen-sink list of federal statutes, treaties, and international laws. But there is no connection whatsoever between the Amended Complaint's factual assertions and the laws and treaties it invokes. Instead, the Amended Complaint asks this Court (and General Dynamics Corporation) to "sift through" a vast number of implausible allegations "and essentially craft a complaint" by picking out the "salient facts [it] should consider in determining whether there is a reasonable inference" that the law was violated. *Zelenak v. Larson*, No. 15-cv-3315-PJS-TNL, 2016 WL 6584926, at *6-7 (D. Minn. Oct. 6, 2016) (holding that a pro se complaint

---

[1] The Amended Complaint denies this, stating that the incidents listed in the Amended Complaint "constitute only the tip of the iceberg of the torture experience by Plaintiff. It would take thousands of pages to completely document the harassment and torture experienced by him." Am. Compl. at 33.

warranted dismissal under Rule 8), *report and recommendation adopted*, 2016 WL 6584910 (D. Minn. Nov. 4, 2016). Such an approach does not satisfy Rule 8.

The Amended Complaint also fails Rule 8 because portions are "indecipherable" due the use of un- or under-defined jargon. *Mendez v. FMC Rochester*, No. 17-cv-3768-JRT-SER, 2017 WL 4574522, at *2 (D. Minn. Sept. 27, 2017) (dismissing a complaint, in part, under Rule 8), *report and recommendation adopted*, 2017 WL 4570777 (D. Minn. Oct. 12, 2017). The Amended Complaint repeatedly refers to concepts like "Biological Application Program Interface ('BioAPI')," "biological-neuron-cognitive Metadata," "Remote Neural Monitoring Systems ('RNM')," and "DEW/NLW" without ever defining or explaining them. *See* Am. Compl. at 10, 12, 13, 15, 18, 32. Without definition or explanation, it would be impossible for General Dynamics Corporation to answer this Amended Complaint. *See Koll v. Wayzata State Bank*, 397 F.2d 124, 126-27 (8th Cir. 1968) (striking complaint under Rule 8 where no "responsive pleading could intelligently be filed by defendants.").

In sum, the allegations in the Amended Complaint "meander[] across a vast landscape pocked by conspiracy." *Hunter v. Rockefeller*, No. 17-cv-1630-DSD-LIB, 2017 WL 2684225, at *1 (D. Minn. June 8, 2017) (dismissing pro se complaint, in part, under Rule 8(a)(2)), *report and recommendation adopted*, 2017 WL 2683977 (D. Minn. June 21, 2017). Because the numerous factual allegations either do not tie to the wrongdoing alleged or are indecipherable, the Amended Complaint should be dismissed under Rule 8.

**b. Rule 8 dismissal should be with prejudice.**

A complaint may be dismissed with prejudice when it is "so deficient or defective that the court is convinced that its defects cannot be cured through re-pleading." *Machen*, 2012 WL 566977, at *15. Such is the case here. As detailed in the Statement of the Case (at 1-6), the Amended Complaint is "based entirely on delusional perceptions of persecution, unreasonable inferences drawn from those delusions, incoherent explanations of fact, or conclusory legal claims cast in the form of factual allegations." *Id.* at *18 (quoting *Adams v. FBI*, No. C 06-07321, 2007 WL 627912, at *2 (N.D. Cal. Feb. 26, 2007) (Breyer, J.)).

Furthermore, dismissal with prejudice is particularly appropriate here because this is Mr. Birapaka's second try at this complaint. He originally filed a version of this Complaint on December 27, 2016. *See* ECF No. 1, No. 16-cv-04350-MJD-KMM (D. Minn.). That action was dismissed without prejudice on July 31, 2017 for failure to make service. *See* ECF No. 15, No. 16-cv-04350-MJD-KMM (D. Minn.). Mr. Birapaka never refiled that case, but instead filed this new action, drawing a different district court judge. The Amended Complaint here is largely the same as in the prior action, except this Amended Complaint adds another 20-plus pages of factual allegations, as well as the reports of Drs. Kolb and Staninger.

**II. The Amended Complaint Should Be Dismissed Because It Fails To State A Claim Under Rule 12(b)(6).**

**a. The Amended Complaint contains no allegations of actionable conduct by General Dynamics Corporation.**

"To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2005)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Put simply, the Amended Complaint fails to allege a single fact showing that General Dynamics Corporation could possibly be liable on any of the alleged theories described in the Amended Complaint. Indeed, aside from the case caption, General Dynamics Corporation is not referred to at all in the Amended Complaint. A complaint which fails to identify the involvement of a defendant in the wrongdoing is "inadequate" even under the "the liberal standard of notice pleading." *Frey v. City of Herculaneum*, 44 F.3d 667, 672 (8th Cir. 1995); *see also Machen*, 2012 WL 566977, at *19 (dismissing a defendant only mentioned in the caption because the "Complaint [was] devoid of facts or allegations" regarding that defendant).

Blanket references to "Defendants," "defense industry contractors," and the like do not rescue the Amended Complaint. *See* Am. Compl. at 13, 27, 36. Use of these blanket terms is classic "shotgun" pleading, where the plaintiff brings its claims against "every conceivable defendant" without specifying which defendants are responsible for which wrongdoing. *See Gurman v. Metro Hous. & Redevelopment Auth.*, 842 F. Supp. 2d 1151, 1153 (D. Minn. 2011) ("Blanket references to . . . 'defendants' are unacceptable unless the references genuinely apply to . . . every defendant."). There are over 60 defendants listed in the case caption. A number of the named defendants could be considered "defense industry contractors." Such blanket labels call for dismissal under Rule 12(b)(6). *See*

*Iqbal*, 556 U.S. at 678 ("A pleading that offers labels . . . will not do.") (internal quotation marks omitted).

Because the Amended Complaint does not contain a single allegation that General Dynamics Corporation engaged in any wrongdoing, it must be dismissed from this action.

**b. The Amended Complaint must be dismissed because it is completely implausible.**

As detailed in the Statement of the Case (at 1-6), the Amended Complaint alleges that a wide-ranging conspiracy involving the U.S. Government and many of America's largest corporations and academic institutions implanted Mr. Birapaka with "war technologies," harassed him, and stole his innermost thoughts for profit.

These allegations "are not only unlikely, but so unrealistic that they may be rejected out of hand." *Hunter*, 2017 WL 2684225, at *2 (dismissing pro se complaint alleging "a cabal of international corporations, former presidents, current public officials, federal agencies, state and municipal governments, and countless other individuals" conspired to deny plaintiff royalties from "Aunt Jemima" products). Many of the Amended Complaint's allegations—for instance, that the pastor's invitation to church prompted a FISA warrant authorizing the implantation of "war technologies"—"are wholly incredible" and "not entitled to the usual assumption of truth." *Id.* Even those facts which may well be true—such as Mr. Birapaka's difficulty in finding a job—do not allow this Court to draw a "reasonable inference" that Mr. Birapaka has been intentionally targeted by a conspiracy. *Iqbal*, 556 U.S. at 678.

Finally, the reports of Drs. Staninger and Kolb don't move the Amended Complaint any closer to plausibility. On the contrary, Dr. Staninger's report is largely incomprehensible. In fact, similar reports prepared by Dr. Staninger attached to other pro se complaints have failed to save those actions from dismissal. *See Hale v. FCC*, No. 15-cv-218, 2017 WL 2702251, at *4 & n.5 (N.D. Okla. June 22, 2017) (dismissing complaint and noting that the reliability of Dr. Staninger's report was "highly suspect"); *Gibson v. NSA*, C/A No. 6:15-132, 2015 WL 1519970, at *3-4 & n.4 (D.S.C. Mar. 12, 2015) (dismissing a complaint that attached Dr. Staninger's report as "delusional"), *report and recommendation adopted*, 2015 WL 1520000 (D.S.C. Mar. 30, 2015).

Dr. Kolb's work is no better. Dr. Kolb herself evidently believes that "a manufacturer of silicone [is] trying to kill her" and "the government may be after her because she had removed a microchip implanted in a patient in the federal witness protection program; she is the reincarnation of Lizzie Borden; the military wanted to hire her 'to conduct 'remote viewing' through out-of-body experiences;' and she uses her psychic powers to help people find things." *Kolb v. Northside Hosp.*, 802 S.E.2d 413, 418 (Ga. Ct. App. 2017) (footnote omitted). Just this month, Dr. Kolb was precluded from testifying in a federal trial court as a medical expert because her "[u]nexplained selective use of the facts fail[ed] to satisfy the scientific method" and "none of her theories have been tested, peer reviewed, or generally accepted by the scientific community." *Laux v. Mentor Worldwide, LLC*, No. 2:16-cv-01026, 2017 WL 5235619, at *4 (C.D. Cal. Nov. 8, 2017).

Because its allegations are wholly implausible, the Amended Complaint should be dismissed. *See Lotton v. United States*, No. 11-258, 2012 WL 2370446, at *4 (E.D. Ky.

June 21, 2012) (Thapar, J.) (collecting circuit authority for the proposition that allegations of "mind control" are implausible and must be dismissed).

**c. The 12(b)(6) dismissal should be with prejudice.**

"[J]udicial economy" counsels in favor of dismissal with prejudice where any further amendment to the complaint would be based on "delusional perceptions of persecution" and "unreasonable inferences drawn from those delusions." *Machen*, 2012 WL 566977, at *18. The Eighth Circuit has agreed that district courts need not accept amendments if they are "clearly frivolous." *Popp Telecom v. Am. Sharecom, Inc.*, 210 F.3d 928, 944 (8th Cir. 2000). Likewise, the Ninth Circuit has affirmed dismissal with prejudice when it would be "futile" to amend a complaint alleging that IBM "destroyed [plaintiff's] life by using various forms of tampering, harassment and mind control." *Moyer v. Int'l Bus. Machs. Corp.*, 81 F. App'x 662, 662 (9th Cir. 2003). Finally, Mr. Birapaka has already amended once in this action and he used the opportunity to file the same fantastic allegations as in the original complaint. He should not be given another chance. This Amended Complaint should be dismissed with prejudice.

**III. At A Minimum, Service On General Dynamics Was Insufficient And The Amended Complaint Should Be Dismissed Or Service Quashed.**

Under Rule 12(b)(5) of the Federal Rules of Civil Procedure, the Amended Complaint should be dismissed or, in the alternative, service should be quashed because Mr. Birapaka failed to effect proper service. Mr. Birapaka's process server delivered the Amended Complaint to Kirsten Storlie, an employee of General Dynamics Missions Systems, Inc. Ex. A. at ¶¶ 2-4. General Dynamics Mission Systems, Inc. is a separate corporation from

and a subsidiary of a subsidiary of General Dynamics Corporation. *Id.* at ¶ 4. Under Eighth Circuit precedent, this service was insufficient because a parent corporation cannot be served by delivering the complaint to a subsidiary. *See Adams v. AlliedSignal Gen. Aviation Avionics*, 74 F.3d 882, 885-86 (8th Cir. 1996). Furthermore, as her Declaration explains in detail (*see* Ex. A. at ¶¶ 4-7), Ms. Storlie is not an "an officer, a managing or general agent, or [an] agent authorized by appointment or by law to receive service of process" for General Dynamics Corporation. Fed. R. Civ. P. 4(h)(1)(b). Because General Dynamics Corporation cannot be served through Storlie, service was insufficient and the Amended Complaint should be dismissed or service should be quashed. *See Adams*, 74 F.3d at 885 (holding that service was insufficient, in part, where the plaintiffs brought forth "no evidence effectively contradicting" the "sworn statement" of a subsidiary's employee "that he [was] not an agent of [the parent corporation] on whom process may be served.").

**Conclusion**

For the above reasons, the Amended Complaint should be dismissed with prejudice or, at the very minimum, service on General Dynamics Corporation should be quashed.

Dated: November 20, 2017

By *s/ Jaime Stilson*

Jaime Stilson (#392913)
stilson.jaime@dorsey.com

**DORSEY & WHITNEY LLP**
Suite 1500, 50 South Sixth Street
Minneapolis, MN 55402-1498
Telephone: (612) 340-2600
Facsimile: (612) 340-2868

Michael A. Doornweerd
(*pro hac vice* pending)
Nathaniel K.S. Wackman
(*pro hac vice* pending)

**JENNER & BLOCK LLP**
353 N. Clark St.
Chicago, IL 60654-3456
Telephone: (312) 222-9350
Facsimile: (312) 527-0484

*Attorneys for General Dynamics Corporation*